Please rise. This court is now in session. Please be seated. Thank you. Madam Clerk, please call the next case. 3-11-0477 People of the State of Illinois v. Andrew Leonard v. Daniel Smith Appellant by Carrie Bryson Ms. Bryson, you may proceed. Thank you. May it please the Court, Counsel Carrie Bryson for Daniel Smith. Mr. Smith was charged in this case with two counts of resisting or obstructing a peace officer following a traffic stop. He was clocked speeding on his way home from work as the manager of a local Dollar General store. The stop was actually initiated in front of his own home. He was stopped as he pulled up in front of his house about 4.30 in the afternoon on an August day. Officer Jacob Rule initiated the stop and approached the defendant and told him he'd be receiving a citation for speeding. The officer then told the defendant to remain in his own vehicle and the officer returned to the squad car to prepare the citation. After some period of time, which the defendant estimated to be about 20 minutes, the defendant exited his car. He said he wasn't feeling well, he was hot out, and he wanted to take his cold groceries inside. Apparently he had things he had bought on his way home. As he exited, the officer... Were his children at home at the time? His children were at home inside the house. He said he needed to also check on his children, although the officer's testimony was that he didn't hear the defendant say that particular statement. So as he exited and started approaching his house... Is there any evidence in the record from the officer's perspective how long riding up this simple speeding ticket was taking him? Sure. The officer testified about... Actually, he had returned his vehicle to run a warrant check and prepare the citation. He said it usually takes between 8 and 14 minutes, though he thought this had taken less time than that. It's not clear whether he's referring just to the warrant check having taken less time or the whole preparing of the citation having taken less time. And we don't have a transcript from what the exact testimony was. This is an agreed statement of facts that was prepared and submitted. There was no recording of the trial in this case. And there was no recording by the officer in his car with a video or anything like that? Nothing was introduced of that nature. So the officer's testimony was that he told the defendant at that point to return to his car. The officer said he was nearly done preparing the citation. He only needed to sign his name. Essentially, the ticket had been written out. It just needed to be signed. Rather than signing it and handing it to the defendant, he told the defendant to go back to his car. And the defendant did not. He told him again. He did not. At that point, the officer grabbed the defendant by the arm and instructed him that he was under arrest. At that point, then, the defendant tensed his arm, pulled it away. And then a struggle ensued, and he was ultimately handcuffed, taken into custody. From this conduct, the state charged two counts of obstructing or resisting. The second count, count two, is based on that physical struggle that occurred after the officer told the defendant he was under arrest. We haven't raised a challenge to that count based on the case law and the facts that were introduced at the trial. That count should stand. It can be affirmed by this court. The law holds the defendant can't resist an arrest, even if he believes it to be unreasonable. And so based on the evidence and the case law, that count should be affirmed. Count one, on the other hand, charged conduct which actually occurred prior to the arrest. It charged the defendant with obstructing his arrest by exiting his vehicle and refusing to return, when that was the conduct which actually led to the defendant being placed under arrest. Logically, that can't support the conviction for obstructing in this case. The defendant was not under arrest when he exited his car and began walking towards his house. What's your best case for that proposition? I guess the case is talking about what constitutes an arrest. We cited Bunch in the brief. There's also the Reed case, and I believe we cited it, talking about the factors of what is an arrest. In deciding whether someone's under arrest, which let me preface this by saying the state did not argue this theory in the trial court. They did not pursue this conviction on the basis that the traffic stop was the arrest, and that he obstructed then by exiting the car because he had already been under arrest. They switched theory at trial. They're switching theory again in this court. But as to that theory that they're now presenting to this court, what constitutes an arrest? Well, you look at, number one, what is the intent of the officer? Was he intending to place the individual under arrest? And then also, what did the defendant understand? And that's evaluated under a reasonable person standard in terms of whether he was under arrest. Well, the officer let the defendant stay in his own car. Was there any evidence that the officer said, remain in your car? There was evidence that he told the defendant to stay in the car, in his own car. He didn't take him to the squad car. The officer went back to his squad car to prepare the citation. Is that a problem? I don't think it's a problem. Would that tend to suggest there was an arrest? I don't think it tends to suggest there was an arrest. In fact, the officer himself, his testimony was that the defendant was placed under arrest after he exited the car and after he refused to return. That's what the record shows the officer's testimony was. So I think the record shows the officer was not intending an arrest at that point. He was going to issue a citation, and not every traffic stop is an arrest. Traffic stop has been held for a long time. Do we look at it from the officer's intent, or do we look at it from what a reasonable person in that situation would think? Sure, we look at both. And I guess if we're looking at what a reasonable person would think, what this defendant thought and what a reasonable person would think, he stopped in front of his own house, he's in his own car, he's allowed to remain in his own car. He wasn't told he was under arrest. There was no testimony that at that point the officer said, you're under arrest. No, that's a conclusion, really, that he was told he couldn't leave. He was told not. He was told to remain in his vehicle. Okay. Okay. He wasn't handcuffed. He wasn't fingerprinted. See, there was no formal declaration of arrest. And those are factors the court looks at, and they're cited in the case law, the cases that are in the brief, in terms of whether an individual is under arrest. But it really doesn't matter in this case whether he was under arrest or not, does it, for the obstructing? I think it does matter in terms of what was charged. The charge in this case was that he obstructed his arrest by exiting the vehicle and refusing to return. As to the second count. No, I'm talking about obstructing. Okay. Okay, on the obstructing thing. You know, there could be a, you know, I don't think there's a problem with the variance between the charge and whether the proofs of the trial. But for obstructing, it's just that you knowingly obstructed a police officer. You knew that the police officer was in their official capacity, and you knew the person was a police officer. You have to knowingly obstruct an authorized act, right, by the peace officer. And we haven't disputed those. So in this case, you've got directions. The police officer directed the person to do something during the process of this incident, correct? Told the defendant to remain in his car while he prepared the situation. And the person refused to do that. He exited the car and then refused the officer's instruction to return. But first of all, I do think there's a problem with the variance in the proof and the charge. If that's, you know, we're now talking about, well, what is he obstructing by exiting the car? At trial, the state shifted from this, it was obstructing arrest, to, well, he's obstructing the issuance of the traffic citation. Well, that's a problem for two reasons. We've talked about them in the brief, and I'll talk about them here. Number one is it's a variance. It's a material variance. It goes directly to an element of the charge in terms of what was the authorized act that was being obstructed. Well, they allege it was the arrest. The defendant prepares for trial based on, well, it's the arrest. If we're talking about the arrest for exiting the vehicle and refusing to return, and that's what the questioning went to at trial. That's what the defense was, that he hadn't been put under arrest at the time that he exited the vehicle and refused to return. Well, he was charged with obstructing the arrest, which hadn't yet happened. If it's the traffic citation, that's a material variance. There's also a problem with that being proof beyond a reasonable doubt because common sense tells us nothing was actually obstructed. The officer could have signed the ticket and handed it to him. That's not speculation. That's common sense. All that was left for him was to put his name on the ticket and hand it to the defendant. He could have done that right there as the defendant was exiting his car. He could have walked to the door with the defendant and handed it to him at the door of his house. He could have mailed it to the defendant. If we're going hypothetically, when a person is stopped for a traffic violation, officers give directions to tell people to stay in their car and do certain things. And those can be, if we're talking hypothetically, dangerous situations for police officers. They could be situations where maybe they've accidentally stopped somebody who had weapons and is trying to escape a murderer. There are all kinds of hypotheticals. But on the obstruction, which the guy was charged with, at the trial they talked about the underlying incident, whether or not he was under arrest, there was a traffic thing. There was evidence, I guess, from this agreed statement, that the officers, in the course of this traffic stop, gives a direction and it wasn't followed. But it's not just not following a direction. There has to be an actual impediment. I mean, Baskerville tells us that you have to actually impede some authorized act by the officer, by the peace officer. Well, if it's preparing the citation, like I've talked about, it wasn't actually impeded. There was no evidence that he was actually impeded. I mean, Baskerville said you have to knowingly obstruct or impede, hinder or impede an authorized act. This may be a better question for the opposing counsel, but isn't there a charge in the criminal code for failure to follow an officer's directions that's not obstruction of justice? Well, you can get an obstruction of justice charge as opposed to obstructing a peace officer. You get a disorderly conduct charge. There was an obstruction here. It's count two. And we haven't disputed that. The physical resistance by the defendant. Okay. Yeah, that's off the table. But looking at count one, the officer wasn't actually hindered or impeded in the issuance of this traffic citation. Just because he chose to order the defendant back to the car at that point rather than squiggle his name on the ticket and hand it over. I was looking back at the cases we cited in the brief. And the second district case, I believe it's Kotlinski, talks about the delay in that case and how much an officer was delayed by the defendant's actual conduct, but also then talks about the choice the officer made to proceed with addressing one thing versus completing the task he had been doing. It was a DUI investigation at issue in that case. The defendant was a passenger in the car being driven by his wife. His wife was out of the car for field sobriety tests. The defendant, the passenger, then exited the car. They told him to get back in. Eventually he did. It took 20-some seconds. Well, at that point, that officer chose to go around and deal with that defendant rather than completing what he was doing. And there's some discussion in there about the officer's choice. The actual delay the defendant created in that case was short, the 20-some seconds before getting back into his car. The officer then chose to address that as opposed to finishing what he was doing. And they did not find an obstruction in that case. And, again, it's in the briefs, and I didn't discuss it at length in the brief, but reviewing it again this morning, it seems apropos in terms of what was actually impeded here. Nothing was actually impeded. Was there an impediment? The officer could have signed that ticket and handed it to the defendant. And if the defendant had been advised that that was the ground on which the state was going to proceed, we might have a more fully developed record about that. But we don't, because the state charged on a different ground. They wandered around through various theories trying to uphold count one in this case. Thank you. None of those theories are sufficient. When you're told to follow direction of the officer and you don't do it, then the officer can't do what the officer was planning on doing of finishing the ticket or whatnot because you still have to be concerned about this guy who's walking around and not doing what you told him. He's not just walking around. He's walking up to his house with a bag from Dollar General. There was no testimony that the officer thought there was some issue here. The officer made the decision to not sign that ticket and instead to, I guess, exert more authority, try and get this guy to go back to his car. It was 91 degrees out. I looked on Weather Underground this morning, on that day in Sterling. He had cold groceries, he was hot, he was sitting in his car. He got out. The officer could have signed that ticket and handed it to him. This should not be the basis for an obstructing charge in this case. We've never had a case where we required an officer to exercise good sense. Well, that may be true. But common sense tells us in this case that the officer wasn't obstructed or hindered by the defendant's acts. Whether that's good sense or not, what the question for this court is, is did the defendant actually obstruct or hinder the officer's ability to perform the authorized act? Which was the issuance of the ticket. Well, under the argument at trial that the state made, it was the issuance of the ticket. Under the theory it charged, it was the arrest. Under the theory it argues in this court, it was the arrest, but the arrest was the traffic stop, not the arrest where the officer actually told the defendant he was under arrest. So there have actually been, I think, three theories put forth in support of this charge. Under any of them, I think this conviction should be reversed. We've made those arguments in the brief, I think for the reasons in the brief and the reasons stated here. Count one should be reversed. Count two, as we said, can stand. And I just want to note, I raised a sentencing credit issue on that. Whether count one is vacated or not, this court should still go on to consider the sentencing issue as well. Thank you. Thank you, Ms. Bryson. Mr. Leonard, you may respond. May it please the court, counsel, with regard to your question, Justice Holdridge, is there a charge stating failure to follow an officer? I don't believe I've ever heard of one. I don't know if there is one. I think it would be obstructing a peace officer or obstructing justice. I cite three cases, Village of Hanover Park, People v. Stewart, and People v. Kinney, which say that an arrest occurs when a police officer stops a vehicle for a traffic stop and actually tells the occupant, the driver, to stay in the vehicle. That is an arrest. And that's what was charged in the charging instrument. The defendant knew that this was a police officer. He was in full uniform. He admitted, the defendant did, that he was speeding. He impeded that arrest when he left the vehicle and he argued with the vehicle. The only difference in the factual basis, I would add to Ms. Bryson's argument, is that the police officer warned the defendant three to five times to return to the vehicle before he said, you're under arrest. He had warned the defendant, if you don't return to the vehicle, you're under arrest. After the third or fifth time, he said, you're under arrest. He tried to arrest this defendant. The defendant struggled. They went to the ground. He called for backup and eventually... Of course, that last stuff has nothing to do with... That's the resisting police officer. Yeah, that was resisting. This is all before the resisting. Yes. The resisting started at one point. We're talking about the point before that. Okay. Don't we have to credit the officer's testimony? He said he hadn't arrested him. Yes, that's in the factual basis. You have to consider the evidence in the light most favorable to the people to show that the people proved beyond a reasonable doubt that the defendant was guilty of obstructing a peace officer. We had to prove that the defendant knowingly obstructed a peace officer, that the officer was performing an authorized act, and the defendant knew that this was a police officer. Our argument is that the defendant was arrested at the time that the police officer said, stay in your car, I will write you a ticket, and I'll be right back. If he wasn't arrested legally, does that defeat your case? No, it does not. I cited this case of People v. Taylor. In that case, this court devised a test of when there may be a variance between the evidence produced at trial and that in the charging instrument. In that case, there were some prisoners in the courthouse. They were sentenced to jail, and they were being let out of the courtroom. Some police officers were following those prisoners. They went out into the hallway where there were a bunch of people, and they had to go down an elevator to get to the police van. The defendant in that case was the wife of one of the prisoners. It was the policy of the police department that only the prisoners and the police officers could ride in the elevator. The wife here, the defendant, tried to get into the elevator and pushed and shoved an officer. They were able to move her out of the elevator, and she was charged with obstructing a peace officer. In that case, the charging instrument stated that the defendant obstructed a peace officer by pushing and shoving the officer. The proof at trial was that the defendant had actually pulled the officers here. This court held that that was not a fatal variance because the defendant was not misled in the preparation of her case, and she was not exposed to double jeopardy. I believe that that case would be directly on point if you believe that the defendant was not arrested at the time that the officer told him to stay in his vehicle. If you don't have any other questions... Your argument about the credit, there's no court that's accepted that position. No, this is a case of first impression. I don't believe that any court has ruled on this exact issue. Yes, that's correct. I could not find any case law that supported the position, but I believe that it would be a case of first impression dealing with these two statutes. There's clearly irreconcilable differences between the two statutes. I believe the proper rule to apply would be apply the more specific rule, which is the obstruction, obstructing charge, rather than the general rule of every prisoner gets credit for every day or partial day in custody. Okay, I don't believe there's any more questions. A reply, Ms. Bryson? Sure. Justice Carter, I want to address your question about if the defendant wasn't under arrest at the time of the traffic stop, does that defeat the state's case? As to that theory that they've presented, I think it does defeat the state's case. There was a variance in the proof. I mean, if we're looking at the Taylor case the state cited and the variance, there the variance went to the defendant's conduct, what was alleged, what was proved. They're pretty closely linked, pushing and shoving and pulling hair. There was no suggestion the defendant was actually misled in preparing defense in that case. In this case, though, I think the record shows the defendant was misled in preparing a defense. The defendant prepared to defend against the charge, which was obstructing the arrest. The state switched its theory at trial to obstructing the issuance of the citation. I do think that the state's case should fall on either theories and that the variance here was fatal. In light of the Taylor case, they talk about if there's a difference between the person and how they were specifically charged and the evidence at trial, they're presenting evidence about what, and I'm not talking about the resisting, but all this stuff beforehand. Then the question, does it meet the three elements of the obstruction test? And I think under any of the theories, the state has put forth, they haven't met, for the reasons stated in my opening argument in the briefs, they haven't met that test. I do want to take a minute to address the credit issue. No court has addressed the interplay of the two statutes, the obstruction provision that requires either a minimum 48-hour jail sentence or 100 hours of community service, in addition to any other sentence that's imposed. But I think the statutes are straightforward and they can be read together. I don't see that they're inconsistent. The credit provision of the Code of Corrections requires a defendant to get credit for every day, or as the case law has interpreted, part of a day that he spends in custody. This statute dealing with the 48-hour requires that the judge order a minimum of 48 consecutive hours in jail. The judge did enter that order. He complied with the statute requiring that he order the 48-hour sentence. He did not comply with the credit provision, though, and there is nothing in either of those statutes or anywhere else in the codes that I could find that would deny this particular defendant that credit. The legislature has generally been clear when they want to deny credit for whether it's days of credit or the $5 a day provision. The legislature has expressly stated when credit should be denied. There is nothing in either of these statutes which would direct the court to deny credit. In the Supreme Court's decision in Burkitt, in Burkitt it would seem to say that, you can read Burkitt's statement, the Supreme Court said that under Section 3, I guess, you can't receive good time credit if it would lower the sentence below the mandated statutory minimum jail term for the offense. Right, and it says that right in the County Jail Good Behavior Act, if you take a day-for-day credit in that instance, that would lower it below the minimum. This isn't lowering it below, though. The defendant has done time. The court entered the order it had to. The defendant has done time for which he should receive credit. Essentially, if you interpret the statutes the way the state is asking, this defendant has to do four days to get credit for two. Generally, you do two days and you get credit for four. If it's something that's day-for-day eligible, you generally earn four days by doing two. Here, this defendant would have to do four days. He's done two. He was sentenced to two. He would have to do four to get credit for two days in this case. If you read these statutes together, one statute requires imposing a specific sentence. The other statute requires the giving of credit. Those things can be accomplished based on the plain language of the statute, and I would propose that that's what this court should do. If you find that that's ambiguous, you should still interpret in favor of the defendant under principles of statutory construction and, again, give the credit. If the legislature wants to deny credit in this circumstance, they would have set it forth already in the statute, and if they later find that this court decides the case in favor of the defendant and what they meant was to deny credit, then the legislature can amend the statute to say that. But based on what the statutes say, they can be read together, they're not inconsistent, and credit should be awarded to this defendant for the time he spent in custody. Okay. Thank you, Ms. Bryson. Mr. Leonard, Bowles, thank you for your arguments in this matter. It's now afternoon. This matter will be taken under advisement and a written disposition shall issue. The court shall stand in recess until 1.15.